UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

RUSSELL SPETTEL,
on behalf of himself and
all others similarly situated,

        Plaintiff,                                Case No. 23-cv-1681

        v.

POLY VINYL CO., INC.,

        Defendant.

## JOINT MOTION FOR PRELIMINARY APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

## <u>INTRODUCTION</u>

Plaintiff Russell Spettel, on behalf of himself and all others similarly situated, and Defendant Poly Vinyl Co., Inc., jointly move this Court for preliminary approval of the parties' settlement of this lawsuit in accordance with the parties' Settlement Agreement & Release.

The Settlement Agreement & Release ("Settlement Agreement") attached to this Motion as **Exhibit 1**, provides for a Gross Settlement Amount of $230,000.00, inclusive of all payments to the Settlement Class (all participating members of the Rule 23 Class and FLSA Collective as defined herein), Plaintiff's Court-approved Service Award, and Plaintiff's counsel's Court-approved attorneys' fees and costs. As reflected in the Settlement Agreement, the parties believe that the settlement is fair and reasonable, as it fully and adequately satisfies this Court's criteria for such settlements. As such, the parties respectfully request that the Court enter an order that:

(1) Preliminarily approves the Settlement Agreement attached as **Exhibit 1** to this Motion as fair, reasonable, and adequate;

(2) Certifies, for settlement purposes only, the Rule 23 Class;

(3) Certifies, for settlement purposes only, the FLSA Collective;

(3) Appoints Walcheske & Luzi, LLC as counsel for the Rule 23 Class ("Class Counsel");

(4) Designates Plaintiff Russell Spettel as representative of the Rule 23 Class;

(5) Approves the parties' proposed Notice of Class and Collection Action Settlement as attached to the parties' Settlement Agreement as Exhibit B and finds that it constitutes valid, due, and sufficient notice to putative Settlement Class members in full compliance with the requirements of applicable law, including the due process clause of the United States Constitution;

(6) Directs that any member of the Rule 23 Class who wishes to request exclusion from the Settlement Agreement, join the FLSA Collective, and/or object to the Settlement Agreement, must do so per the instructions set forth in the Notice which identifies the deadlines for Rule 23 Class members to opt out of the case, join the FLSA Collective, and object, and that the Court will not consider objections or requests for exclusion of any Rule 23 Class member who does not comply with the instruction set forth in the Notice;

(7) Directs that any member of the Rule 23 Class who has not properly requested exclusion from the Settlement Agreement be bound by the Settlement Agreement in the event the Court issues a Final Order Approving Settlement; and

(9) Schedules a Fairness Hearing to determine whether to approve the Settlement Agreement as fair, reasonable, and adequate, Plaintiff's Service Award, and Plaintiff's counsel's attorneys' fees and costs.

## STATEMENT OF FACTS

### I. PROCEDURAL HISTORY

On December 15, 2023, Plaintiff Russell Spettel filed his Complaint against Defendant Poly Vinyl Co., Inc. on behalf of himself and all other hourly-paid employees of Defendant. (ECF No. 1.) During the three (3) year period preceding the filing of his Complaint, Plaintiff was an hourly-paid employee in the position of Warehouse Support at Defendant. (*Id.* at ¶ 24.)

Plaintiff's Complaint asserted two (2) claims pursuant to the Fair Labor Standards Act of 1938, as amended ("FLSA") and three (3) claims pursuant to Wisconsin's Wage Payment and Collection Laws ("WWPCL") relating to Defendant's alleged unlawful policies and practices concerning timeshaving and failure to include non-discretionary compensation in its hourly employees' regular rate for overtime calculation and compensation purposes. (*See id.* at ¶¶ 88-142.) Plaintiff's claims pursuant to the FLSA principally sought unpaid overtime resulting from Defendant's alleged unlawful conduct, (*see id.* at ¶¶ 88-110), while Plaintiff's claims pursuant to the WWPCL principally sought unpaid overtime and straight time (at employees' agreed-upon rates of pay). (*See id.* at ¶¶ 111-142.)

While Plaintiff's claims were brought on behalf of a putative FLSA collective and Rule 23 class, no motions for (conditional) certification of an FLSA collective or for certification of a Rule 23 class have been filed, and Plaintiff is the only individual who has consented to join this action to date. (*See* ECF No. 1-3.)

### II. SETTLEMENT BACKGROUND

In approximately June 2024, the parties began engaging in formal discovery, wherein they, in part, exchanged details and information regarding Defendant's timekeeping and compensation practices, as well as data and records demonstrating the operations of the same. (Declaration of

James A. Walcheske ("Walcheske Decl."), ¶ 3.) In approximately August 2024, the parties first discussed the possibility of requesting mediation with a magistrate judge. (*Id.* at ¶ 4.) To that end, in September 2024 the parties agreed Defendant would provide sample data from a subset of putative Settlement Class Members and that Plaintiff would provide his responses to Defendant's written discovery, but that they would otherwise effectively "pause" their litigation efforts, and request referral to the Magistrate Judge for mediation. (*Id.*)

On November 19, 2024, Plaintiff's counsel, on behalf of the parties, requested a referral to the Magistrate Judge for mediation purposes. (ECF No. 16.) That mediation was later scheduled for and held on January 6, 2025. (ECF No. 19.) As noted in Magistrate Judge Joseph's Mediation Minutes and Order Returning Case, mediation was successful. (*Id.*)

While the parties reached an agreement in principle on January 6, 2025, they nonetheless spent the following months reducing their agreement to writing, circulating numerous draft settlement agreements and versions of the parties' proposed notice, and crafting the individual allocations to putative Settlement Class Members. (Walcheske Decl., ¶ 6.) They further collaborated on the present Motion. (*Id.*) On or about March 18, 2025, their Settlement Agreement was fully executed. (*See* Ex. 1.)

While the parties were ultimately able to reach an amicable resolution, neither party has ever conceded their respective positions on the merits of Plaintiff's claims. Plaintiff has consistently maintained the merits of his claims. Conversely, Defendant has steadfastly denied Plaintiff's claims, while also maintaining the merits of its defenses, and further denied any wrongdoing or liability. (*See id.* at p. 1.) Accordingly, this case presented a *bona fide* dispute between the parties.

However, so as to avoid expense and inconvenience to the parties, as well as the distraction of burdensome and protracted litigation, and the risks of an adverse judgment against either party, the parties ultimately concluded that it was in their mutual best interests to resolve the litigation amicably. (*See id.*) As a result, the parties now jointly request that this Court approve their Settlement Agreement to end the litigation.

The purpose of the Settlement Agreement is to settle fully and finally the claims contained in Plaintiff's Complaint, as well as any claims that are or could have been asserted under the FLSA or state and local wage and hour laws, including the WWPCL, in this lawsuit on behalf of the Rule 23 Class. Thus, if the Settlement Agreement is approved, each individual who participates in the settlement will release any wage and hour claims he or she might have against the Releasees (as defined in the Settlement Agreement) under the FLSA, WWPCL, or any other wage and hour law.

## III.     THE SETTLEMENT AGREEMENT

The parties' Settlement Agreement is attached as **Exhibit 1**, and its terms are summarized below.

### A.     The FLSA Collective

For settlement purposes only, the parties have agreed to certify the following FLSA Collective:

> All hourly-paid employees of Defendant in the State of Wisconsin employed at any time between January 1, 2022, and December 31, 2024, and who were subject to Defendant's rounding system and/or received a material incentive payment in addition to their hourly rates of pay, and who return a Consent to Join Form within forty-five (45) calendar days of the postmark on the parties' Notice of Class and Collective Action Settlement.

(*Id.* at ¶ 1.10.)

5

### B.    The Rule 23 Class

For settlement purposes only, the parties have agreed to certify the following Rule 23 Class

pursuant to Fed. R. Civ. P. 23:

> All hourly-paid employees of Defendant in the State of Wisconsin employed at any time between January 1, 2022, and December 31, 2024, and who were subject to Defendant's rounding system and/or received a material incentive payment in addition to their hourly rates of pay, and who neither return a Consent to Join Form nor file a Request for Exclusion within forty-five (45) calendar days of the postmark on the parties' Notice of Class and Collective Action Settlement.

(*Id.* at ¶ 1.23.)

### C.    Summary of the Settlement Agreement's Terms

The general terms of the Settlement Agreement can be summarized as follows:

- The Gross Settlement Amount is $230,000.00, which is the maximum amount that Defendant has agreed to pay to fully resolve and settle the claims asserted in Plaintiff's Complaint, (*id.* at ¶ 1.13);

- For settlement purposes only, the parties agree to stipulate to certify the FLSA Collective and Rule 23 Class, (*id.* at ¶ 2.2), and said stipulation has been filed with the Court;

- The Settlement Agreement calls for a Service Award to Plaintiff in the amount of $7,500.00, subject to Court approval, (*id.* at ¶ 3.3(A)), and payment of Plaintiff's counsel's attorneys' fees and costs in the total amount of $77,071.67, subject to Court approval, (*id.* at ¶ 3.2(A));

- The anticipated Net Fund created for payments to the Settlement Class is $145,428.33, (*see id.* at ¶ 1.17), from which each member who opts-in to the FLSA Collective and each participating Rule 23 Class member shall receive their respective allocation as calculated by Plaintiff's counsel, (*id.* at Ex. A);

- No later than thirty (30) days after the Court's entry of the Preliminary Approval Order, Plaintiff's counsel will mail the Court-approved Notice and Consent to Join Forms to all putative Settlement Class members via U.S. first-class mail, (*id.* at ¶ 2.7);

- If a Notice is returned as undeliverable, Plaintiff's counsel shall take all reasonable steps to obtain a correct address for the intended recipient, including one entry level skip trace, and will remail the Notice to an updated address if discovered, (*id.* at ¶ 2.3);

- Putative Settlement Class members have forty-five (45) calendar days after the date Notice is mailed or remailed to opt-into the FLSA Collective, to request exclusion from the Rule 23 Class, and/or to object to the Settlement Agreement, (*id.* at ¶ 1.19, Ex. B) (the "Notice Period"), and Plaintiff's counsel shall provide copies of the same to Defendant's counsel within fifteen (15) days of the foregoing deadline;

- The parties request a Final Fairness and Approval Hearing with the Court subsequent to the close of the Notice Period and approximately one hundred and twenty (120) days after entry of the Preliminary Approval Order, for the purpose of final approval of the Settlement Agreement as fair, reasonable, and adequate, and approval of Plaintiff's Service Award, and Plaintiff's counsel's attorneys' fees and costs, (*see id.* at ¶¶ 1.11, 3.2(A), 3.3(A));

- No later than forty-five (45) calendar days from the latest of (i) entry of the Court's Final Approval Order, if entered; (ii) the deadline for appealing the Final Approval Order, if any member of the Settlement Class timely objects to the Agreement, but does not file a timely appeal; or (iii) the date all appeals are resolved, if any member of the Settlement Class timely objects to the Agreement and timely appeals the Final Approval Order, Defendant will mail Settlement Checks to Settlement Class Members via U.S. first-class mail using the last known addresses for

7

such individuals, as well as any updated mailing addresses obtained and provided by Plaintiff's counsel during the Notice Period, (*id.* at ¶ 2.12);

● Any of the Net Fund that is not paid due to an individual's decision not to opt-into the FLSA Collective or to exclude him or herself from the Settlement Agreement, as well as a Settlement Class Member's failure to cash a settlement check within sixty (60) days from the date the check is issued (or reissued), or resulting from an inability to deliver a settlement check to a Settlement Class Member, will revert to Defendant. (*See id.* at ¶¶ 2.13, 3.1(C).)

The parties believe the agreed-upon amounts and terms of the Settlement Agreement are fair and reasonable. The Agreement was reached through arm's length negotiations and with the assistance of Magistrate Judge Joseph and in recognition of the risks, uncertainty, expenses, and costs faced by the parties if they continued the litigation. The Gross Settlement Amount and resulting Net Fund were designed and allocated to provide Settlement Class Members with amounts representative of what they were calculated to be allegedly owed, based on Plaintiff's counsel's analysis of all relevant data and information, (Walcheske Decl., ¶ 7), and the payment structure created through the Settlement Agreement requires no further action from anyone to participate in the settlement. The parties' proposed Notice attached as Exhibit B to the Settlement Agreement adequately informs Settlement Class Members of the parties' dispute, their rights and obligations, and the legal implications of their actions in relation to the Settlement Agreement. (Ex. 1, Ex. B.) Because the parties' settlement is fair and reasonable and was reached at arm's length, the parties request that the Court grant preliminary approval of the Settlement Agreement and authorize the sending of Notice in a form substantially similar to that attached to the Settlement Agreement as Exhibit B.

**ARGUMENT**

I.  **PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS APPROPRIATE**

    A.    **The Criteria for Preliminary Approval Has Been Satisfied**

Resolution of class action litigation by settlement is favored by the federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996). Settlement of a Fed. R. Civ. P. 23(b)(3) class action may be approved only if: (1) the individual class members are afforded an opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).

In reviewing a proposed settlement agreement, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers National Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted). Other factors courts are to consider are the complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the ability of Defendant to withstand greater judgment; and the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Preliminary approval of a class action settlement allows putative class members to receive notice of the proposed settlement terms and the date and time for the fairness hearing at which putative class members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement agreement may be presented. *See* Manual for Complex Litigation at §§ 13.14, 21.632.

9

## 1. The Settlement Agreement is fair, reasonable, and adequate.

The Settlement Agreement's terms as summarized above are fair and reasonable. Real disputes exist between the parties as to whether liability exists in this case and, if liability were proven, the extent of damages. Specifically, the parties disagree on Plaintiff's ability to prove liability, or, even if proven, his ability to prove willfulness pursuant to either the FLSA or WWPCL, and his ability to establish the amount/extent of any award of liquidated damages and/or civil penalties due, if any.

The anticipated monetary value of the Net Fund payable to Settlement Class members ($145,428.33) is a combination of the amounts allocated to the Rule 23 Class and the FLSA Collective. (Walcheske Decl., ¶ 8.) The amounts allocated to each Rule 23 Class member were calculated based on their reasonably calculated "loss" stemming from Plaintiff's timeshaving claim, as were determined utilizing the number of workweeks each Class member worked at Defendant, and their reasonably calculated "loss" stemming from Plaintiff's non-discretionary compensation claim, as were determined based on their actual overtime hours worked and actual amount of additional compensation received. (*Id.* at ¶ 9.)

During the course of the statutory period, Defendant utilized two (2) timekeeping systems, TimeStar and iSolved. (*Id.* at ¶ 10.) To calculate putative Settlement Class Members' damages, Plaintiff's counsel first ran an analysis on the operation of Defendant's TimeStar timekeeping system to determine whether the system operated in a neutral fashion. (*Id.*) Plaintiff's counsel found that individuals either had their punch times rounded to their detriment or paid to the minute. (*Id.*)

Plaintiff's counsel then calculated the delta between individuals' punch times and rounded times to determine their average "loss" per shift. (*Id.* at ¶ 11.) Counsel then ran a comparison of

rounded hours per shift against their actual, recorded punches to monetize the delta, before running additional calculations to factor in liquidated damages of 1.5x on straight time deltas and 2x on overtime deltas. (*Id*.)

In reviewing the data provided, Plaintiff's counsel determined that Defendant switched from TimeStar to iSolved on or about May 7, 2023. (*Id.* at ¶ 12.) Plaintiff's counsel first ran an analysis on the operation of Defendant's iSolved system to determine whether the system operated in a neutral fashion and found that there were times when hourly employees benefitted from the operation of the system, in addition to times that it operated to their detriment. (*Id*.) In total, while the system operated more generally to the detriment of hourly employees, it did not do so to as great of an extent as Defendant's TimeStar system, which appeared to mainly operate to employees' detriment, rather than to their benefit. (*Id.* at ¶ 13.) In addition, Plaintiff's counsel's analysis revealed that Defendant's iSolved system ceased rounding hourly employees' hours worked on or about April 8, 2024, at which time such employees were compensated to the minute. (*Id*.)

Given this analysis, the "bulk" of the putative Settlement Class Members' potential damages were prior to the implementation of Defendant's iSolved system, while they appeared to continue to a much lesser extent thereafter, and ended on or about April 8, 2024. (*Id*.) To account for this, the headcounts from Defendant's facilities in the State of Wisconsin and the hourly employees' dates of employment at those facilities were taken into account to divide an extrapolation of rounding damages across, first, each facility, and then, second, each employee at that facility. (*Id.* at ¶ 14.) Then, the amounts allocated to each facility and person were determined based on the number of workweeks worked while TimeStar was utilized, versus the number of workweeks iSolved was utilized. (*Id*.)

11

For the purpose of allocating the Parties' settlement, these same percentages and allocations were utilized. (*Id.* at ¶ 15.) Thus, the Parties believe that the amounts allocated to each individual, putative Settlement Class Member as set forth in Exhibit A for their "rounding" damages owed is representative of their amounts owed. (*See id.*) As set forth therein, Rule 23 Class Members who do not consent to join the FLSA Collective will receive fifty percent (50%) of their "full" rounding allocations if they do not consent to join the FLSA Collective. (Ex. 1, Ex. A.) This is in recognition of the third year and double damages available under the FLSA, as compared to the damages available under the WWPCL. (*See id.*)

With respect to the nondiscretionary damages calculations, the amount of actual damages each person was calculated, and then liquidated damages pursuant to the FLSA was applied. (Walcheske Decl., ¶ 16.) While an average per workweek was then calculated, such a formulation would not "cleanly" translate over an extrapolation, given that while the total number of individuals who received an incentive payment was known, the number of individuals who also worked overtime and the number of workweeks in which they worked overtime to which such payments applied were not known. (*Id.* at ¶ 17.) Accordingly, while less "technical," Plaintiff's counsel calculated the average amount "owed" to each individual in the sample data, inclusive of liquidated damages, which was then extrapolated to all putative Settlement Class Members. (*Id.*)

Like the "Rounding" damages, the amounts Rule 23 Class Members who do not consent to join the FLSA Collective will receive fifty percent (50%) of their "full" rounding allocations if they do not consent to join the FLSA Collective, (Ex. 1, Ex. A), which, again, is in recognition of the third year and double damages available under the FLSA, as compared to the damages available under the WWPCL. (*See id.*)

Given the foregoing, the parties believe that such amounts constitute a reasonable and adequate recovery.

**2.      The parties' Settlement Agreement was reached through arm's-length negotiations.**

Despite the parties' divergent views regarding Plaintiff's claims and the potential damages available, they expended considerable time and effort to work toward a compromise in this matter and negotiated at arm's length to resolve the claims of Plaintiff and all putative members of the Settlement Class. Indeed, as detailed herein, even after the parties reached an agreement in principle, they still devoted significant time to finalize and memorialize all aspects of their agreement as embodied in the Settlement Agreement, including crafting individualized allocations to be represent each Settlement Class member's potential damages and recovery.

**3.      The Net Fund provides adequate relief for the Rule 23 Class.**

As explained herein, the parties agreed to structure the portion of the Net Fund allocated to the Rule 23 Class to award monies to each and every member of the Class, with the amounts allocated to them being representative of their actual amounts allegedly owed, without having to take any action whatsoever. (*See* Walcheske Decl., ¶¶ 7-17.) Thus, the amount payable to each Rule 23 Class member represents a reasonable and fair recovery, particularly in light of the types of claims in dispute and the risks present in the case, including the risk that the Rule 23 Class would not be certified or, even if it was, that Plaintiff and the Rule 23 Class would ultimately receive nothing at trial or lesser amounts than that allocated to them through the Settlement Agreement, which also assumes that their claims survived summary judgment – yet another risk. (*Id.* at ¶ 18.)

13

Case 2:23-cv-01681-JPS      Filed 03/21/25      Page 13 of 24      Document 21

## 4. **Plaintiff's agreed-upon Service Award is reasonable.**

The Seventh Circuit recognizes that service awards are appropriate in circumstances such as those presented by this case and look to the following relevant factors: actions the plaintiff took to protect the class's interests; the degree to which the class benefited from those actions; and the amount of time and effort the plaintiff expended in pursuing litigation. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The Settlement Agreement provides that Plaintiff will receive a Service Award in the amount of $7,500.00. (Ex. 1, ¶ 3.3(A).) This Award, which Defendant stipulates is reasonable, (*id.*), is in recognition of Plaintiff's efforts in this case, as well as the benefit each Rule 23 Class Member stands to obtain as a result of those efforts.

The Service Award is fair and reasonable given the efforts undergone and risks assumed by Plaintiff in initiating and prosecuting this litigation and his efforts in securing a recovery on behalf of himself and all members of the Settlement Class. Further, the Service Award is reasonable and within the range of service awards approved by this Court and those in the Eastern District of Wisconsin, relative to the amount recovered.[1]

Moreover, this Service Award was agreed to separately from the Net Fund created for Settlement Class members. (*See* Ex. 1, ¶ 3.3(C).) However, Plaintiff nonetheless agreed that any

---

[1] *See, e.g.*, *Hoffman v. Inland Flexo, LLC*, Case No. 22-cv-103-PP, ECF No. 31 (E.D. Wis. May 31, 2024) ($7,500 Service Award with $205,000 Gross Settlement Amount); *Jorgensen-Ziebert v. Agnesian Healthcare, Inc.*, Case No. 21-cv-302-LA, ECF No. 33 (E.D. Wis. Ay 16, 2024) ($10,000 Service Award with $275,000 Gross Settlement Amount); *McWilliams v. Skana Aluminum Co.*, Case No. 22-cv-1179-WCG, ECF No. 47 (E.D. Wis. Apr. 5, 2024) ($7,500 Service Award, $152,000 Gross Settlement Amount); *Magalhaes, et al. v. Proampac Intermediate, Inc., et al.*, Case No. 20-cv-1333-WCG, ECF No. 53 (E.D. Wis. Nov. 18, 2022) ($7,500 Service Award, $237,500 Gross Settlement Amount); *Medina v. Automax Financial, LLC*, Case No. 19-cv-1582-JPS, ECF No. 41 (E.D. Wis. Jan. 29, 2021) ($7,500.00 Service Award, $79,570.38 Gross Settlement Amount); *Johnson v. National Technologies, Inc.*, Case No. 18-cv-462-DEJ, ECF No. 57 (E.D. Wis. July 22, 2019) ($8,500.00 Service Award, $206,721.77 Gross Settlement Amount).

monies not awarded to him will become part of that Fund to be reallocated across all participating Settlement Class members. (*Id.*)

For all such reasons, the Service Award is fair and reasonable under the circumstances and should be approved by the Court.

>    **5.**   **Plaintiff's counsel's attorneys' fees and costs are reasonable and consistent with fund recovery principles.**

As a result of this litigation and in furtherance of its resolution, the parties have agreed that Plaintiff's counsel will bring a motion before this Court for approval of an award of attorneys' fees and costs in a total amount of $77,071.67. (*Id.* at ¶ 3.2(A).) This amount is comprised of a recovery of fees of one-third (1/3) of the Gross Settlement Amount ($76,666.67) plus $405.00 in litigation-related costs. (*Id.*) Notably, it does not explicitly, but implicitly includes, the amounts associated with administration of the Parties' settlement. (Walcheske Decl., ¶ 19.)

As will be explained in more detail in Plaintiff's counsel's forthcoming brief in support of their requested award of attorneys' fees and costs, Plaintiff's counsel believes that their requested attorneys' fees are reasonable and consistent with common fund principles and that the percentage of their recovery (33.33%) satisfies the "market-based approach" utilized when setting the percentage of a settlement fund to be awarded. In keeping with that approach, federal courts, including this Court and others in this District, have repeatedly approved attorneys' fees in the amount of one-third (1/3) of the gross settlement amount in collective and class cases under the FLSA and WWPCL, respectively. Further, it is consistent with the rate utilized by other practitioners in this District, as well as with Plaintiff's counsel's fee agreement with Plaintiff. Accordingly, Plaintiff's counsel submits that their requested award of attorneys' fees and costs is reasonable and consistent with common fund recovery principles.

## II. THE RULE 23 CLASS SHOULD BE CERTIFIED BECAUSE IT SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 23

### A. The Rule 23 Class Satisfies the Implicit Standard of Definiteness Required by Courts

In addition to the standards stated in Fed. R. Civ. P. 23(a) and 23(b), federal courts require that the implicit standards for certification be met: (1) the proposed class definition must be definite – that is, ascertainable, precise and objective[2]; and (2) Plaintiff must be a member of the class he represents.

The members of the Rule 23 Class are definite. The parties have identified these individuals, have exchanged and analyzed timekeeping and compensation records for these people, and have calculated their individual, representative amounts owed. The Rule 23 Class's definition does not include any subjective criteria. The Rule 23 Class includes all hourly-paid employees of Defendant in the State of Wisconsin between January 1, 2022, and December 31, 2024. (Ex. 1, ¶¶ 1.10, 1.23.) As a former hourly-paid employee of Defendant in the State of Wisconsin during the relevant time period, Plaintiff is a member of the Rule 23 Class as defined.

### B. The Rule 23 Class Satisfies Fed. R. Civ. P. 23(a)'s Requirements of Numerosity, Commonality, and Typicality and, with Her Counsel, Plaintiff Will Fairly and Adequately Protect the Interests of the Rule 23 Class

#### 1. The Rule 23 Class is sufficiently numerous.

The Seventh Circuit has held that the numerosity requirement of Fed. R. Civ. P. 23(a) requires a showing that the number of members in the proposed class is so large as to make joinder impracticable. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 663-4 (7th Cir. 2004). To that end, "[t]he Seventh Circuit has indicated that a group as small as forty may satisfy the numerosity requirement." *Schilling v. PGA Inc.*, 293 F. Supp. 3d 832, 837 (W.D. Wis. 2018). "This is

---

[2] *Blihovde v., St. Croix*, 219 F.R.D. 617, 614 (W.D. Wis. 2003).

consistent with the rule of thumb adopted in most courts that proposed classes in excess of 40 generally satisfy the numerosity requirement." *Id.* (internal quotations omitted); *see also Pruitt v. City of Chicago*, 472 F.3d 925, 926-27 (7th Cir. 2006) ("Sometimes 'even' 40 plaintiffs would be unmanageable"); *Oplchenski v. Parfums Givenchy, Inc.*, 254 F.R.D. 489, 495 (N.D. Ill. 2008) ("Generally, where class members number at least 40, joinder is considered impracticable and numerosity is satisfied.").

Here, and for settlement purposes, the Rule 23 Class is comprised of approximately 268 current and former employees of Defendant. (Ex. 1, ¶ 2.6; *see also id.* at Ex. A.) Thus, it would clearly be administratively untenable to join each individual class member in this action and, therefore, the numerosity requirement is satisfied.

## 2. Common questions of law and fact predominate.

Rule 23(a) requires a finding that there are questions of fact or law which are common to the class. Fed. R. Civ. P. 23(a)(2). This requires plaintiffs to show that they have all suffered the same injury, such that resolving the common issue will resolve all of the included claims in a single stroke. *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." (internal citations omitted)); *Williams-Green v. J. Alexander's Rests., Inc.*, 277 F.R.D. 374 (N.D. Ill. 2011) ("[Plaintiff] has demonstrated that her claims . . . arise from a common nucleus of fact based upon standardized conduct and, therefore, has satisfied the commonality requirement of Rule 23(a)(2).").

Questions common to the Rule 23 Class include whether: they were all subject to Defendant's same timekeeping and compensation policies and practices; they performed compensable work at all times "clocked in," such that their "raw" timekeeping records (as opposed

to their hours worked as rounded) are representative of the their actual hours worked; and the additional compensation they received was nondiscretionary in nature such that it should have been but was not included in their regular rates of pay for overtime calculation and compensation purposes.

The common questions of law and fact, as alleged in Plaintiff's Complaint, are sufficient to meet the Fed. R. Civ. P. 23(a)(2) standard as they arise from a common nucleus of operative fact, namely Defendant's timekeeping and compensation policies and practices.

### 3. Plaintiff's claims are legally and factually similar to those of the members of the Rule 23 Class.

The typicality requirement is closely related to the question of commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs . . . who can advance the same factual and legal arguments may be grouped together as a class." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). The typicality requirement, however, focuses only on whether the plaintiff's claim is based on the same legal theory and arises from the same course of conduct that gives rise to the claims of the other members of the proposed class. *Rosario*, 963 F.2d at 1018. Typicality focuses on the defendant's actions leading to the alleged violation and not on possible particularized defenses against certain individual class members. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

Plaintiff qualifies as a member of the Rule 23 Class. The legal theories advanced by Plaintiff – that Defendant failed to compensate him for all compensable hours worked by rounding

and unlawfully shaving time from his weekly timesheets for pre- and post-shift worked and work performed, and that Defendant failed to include all forms of nondiscretionary compensation in his regular rate for overtime calculation and compensation purposes – allegedly apply equally to Plaintiff and the class members he seeks to represent. Because Plaintiff's claims involve the same legal theories and arise from the same alleged course of conduct that gives rise to the claims of the Rule 23 Class, the typicality element is satisfied.

        **4.**     <u>**Plaintiff and Plaintiff's Counsel will fairly and adequately protect the interests of the Rule 23 Class.**</u>

The final inquiry under Rule 23(a) consists of two parts: (1) the adequacy of Class Counsel; and (2) the adequacy of representation provided in protecting the different, separate, and distinct interests of the Rule 23 Class members. *Retired Chicago Police Ass'n v. Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (*en banc*)).

Walcheske & Luzi, LLC seeks to represent the Rule 23 Class as Class Counsel. Walcheske & Luzi, LLC has successfully served as Class Counsel in numerous cases involving claims similar to Plaintiff's and, therefore, is qualified to handle the claims and causes of action at issue in this litigation and the resolution thereof.

Further, Plaintiff does not have any antagonistic or conflicting interests with the class members she seeks to represent. Plaintiff was allegedly injured by the same conduct as the class members and seeks compensation for his own benefit and for the benefit of the class members he seeks to represent. Plaintiff and her counsel thus satisfy the requirements of Fed. R. Civ. P. 23(a).

**C.** **The Rule 23 Class Satisfies Fed. R. Civ. P. 23(b) Because Common Questions of Law and Fact Predominate Over any Individualized Inquiries and Because Judicial Economy is Enhanced by Class Treatment**

In addition to meeting Fed. R. Civ. P. 23(a)'s requirements, Plaintiff must satisfy one of the requirements of Fed. R. Civ. P. 23(b). Where, as here, Plaintiff seeks monetary damages, the inquiry properly focuses on Fed. R. Civ. P. 23(b)(3). *Blihovde*, 219 F.R.D. at 619.

Under Fed. R. Civ. P. 23(b)(3), class certification is proper where questions of law or fact common to the entire class predominate over individual claims and a class action is superior to other methods for fair and efficient adjudication. Fed. R. Civ. P. 23(b). The Seventh Circuit has summarized this requirement by stating that, "class action treatment is appropriate and permitted by Rule 23 when judicial economy from the consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for a decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003).

**1.** **Common questions of law or fact predominate.**

The question to be answered here is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Blihovde*, 219 F.R.D. at 620 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). When challenging a uniform policy, the validity of those policies predominate over individual issues and class certification is appropriate. *Id.* (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 147 n. 20 (1982)). Further, where a uniform policy is challenged, individual inquiries into the application of that policy to an individual within the class will not supplant predominance. *Id.*

Through this settlement, the parties have resolved a dispute regarding Defendant's timekeeping and compensation policies and practices, which Plaintiff alleges violated the law.

Because the policies and practices were uniformly applied to the Rule 23 Class, and because this settlement resolves the parties' disputes over these policies and practices, common issues predominate in this matter, and Fed. R. Civ. P. 23(b)(3) is satisfied.

### 2.      Class resolution is the superior method of resolution.

In evaluating superiority, courts consider: (1) the interests of the class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the desirability of concentrating the claims in one forum; and (4) the difficulty of managing the class. Fed. R. Civ. P. 23(b)(3). Neither Plaintiff nor Defendant is aware of any other pending litigation regarding the issues that are the subject of this controversy.

The desirability of class resolution in this case is readily apparent given the size of the Rule 23 Class and the nature of the alleged violations. The challenged policies and practices allegedly harmed each member of the Rule 23 Class; however, each class member's individual interest in prosecuting his or her claim is inherently small given the monetary value of each individual's claim (if any) as contrasted against the time and expense inherent in the litigation process. (*See* Ex. 1, Ex. A.) That said, to the extent that any Rule 23 Class member would prefer to litigate his or her claim separately, the individual can simply request exclusion from the Settlement Agreement and do so.

Moreover, the monetary value of many Rule 23 Class members' claims is relatively small, (*see id.*), such that individual adjudication of their claims is practically inefficient and unlikely. Accordingly, class treatment is a superior method for resolving this dispute, satisfying Rule 23(b)(3).

## D. The Parties' Proposed Notice and Manner of Service are Appropriate

In order to protect the rights of absent members of a settlement class, the Court must provide the best notice practicable to all members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1985). Such a notice should define the class, describe clearly the options open to the class members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorneys' fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the class members to calculate individual recoveries, and prominently display the contact information of class counsel and the procedure for making inquiries. Manual for Complex Litigation at § 21.312.

The parties' proposed Notice, attached to their Settlement Agreement as Exhibit B, meets each of the above criteria. Thus, the parties believe that it provides the best notice practicable to all Rule 23 Class members.

Further, and pursuant to the parties' Settlement Agreement, Plaintiff's counsel will mail a copy of the Notice to all putative Settlement Class members via U.S. first-class mail. (Ex. 1, ¶¶ 2.3, 2.7.) Counsel is responsible for taking reasonable steps, including performing an entry level skip trace, to locate an updated address for an otherwise absent Rule 23 Class member, as necessary. (*Id.* at ¶ 2.3.)

Given these procedures, the parties believe that not only are the contents of their proposed Notice reasonable, but the method of delivering the Notice and locating Class members is also reasonable.

## REMAINING PROCEDURE FOLLOWING PRELIMINARY APPROVAL

Should this Court grant preliminary approval of the parties' Settlement Agreement, Plaintiff requests that the Court set the following schedule in accordance with the Settlement Agreement:

(a)     No later than thirty (30) days after the Court's entry of the Preliminary Approval Order, Plaintiff's counsel will mail the Court-approved Notice and Consent to Join Forms to all putative Settlement Class members via U.S. first-class mail, (*id.* at ¶ 2.7);

(b)     Putative Settlement Class members have forty-five (45) calendar days after the date Notice is mailed or remailed to opt-into the FLSA Collective, to request exclusion from the Rule 23 Class, and/or to object to the Settlement Agreement, and Plaintiff's counsel shall thereafter provide copies of the same to Defendant's counsel, (*id.* at ¶ 1.19, Ex. B);

(c) A Fairness Hearing approximately one hundred and twenty (120) days after entry of the Preliminary Approval Order, for the purpose of final approval of the Settlement Agreement as fair, reasonable, and adequate, and approval of Plaintiff's Service Award, and Plaintiff's counsel's attorneys' fees and costs. (*See id.* at ¶¶ 1.11, 3.2(A), 3.3(A).)

## CONCLUSION

For all the reasons stated above, the parties respectfully request that the Court enter an order granting certification of the FLSA Collective and Rule 23 Class, preliminarily approving the parties' Settlement Agreement, and authorizing the sending of notice to all putative Settlement Class members.

Dated this 21st day of March, 2025.

**WALCHESKE & LUZI, LLC**  
Counsel for Plaintiff

 s/ *James A. Walcheske*  
James A. Walcheske, State Bar No. 1065635  
WALCHESKE & LUZI, LLC  
235 North Executive Drive, Suite 240  
Brookfield, Wisconsin 53005  
Email: jwalcheske@walcheskeluzi.com  
Telephone: (262) 780-1953

**CONWAY, OLEJNICZAK & JERRY, S.C.**  
Counsel for Defendant

s/ *Kurt A. Goehre*  
Kurt A. Goehre, State Bar No. 1068003  
CONWAY, OLEJNICZAK & JERRY, S.C.  
231 South Adams Street  
Green Bay, Wisconsin 54305  
Email: kag@lcoglaw.com  
Telephone: (920) 437-0476