UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

RUSSELL SPETTEL,
on behalf of himself and all
others similarly situated,

        Plaintiff,

v.

POLY VINYL CO., INC.,

        Defendant.

Case No. 23-cv-1681

---

## JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT

---

Plaintiff Russell Spettel, on behalf of himself and all others similarly situated, and Defendant Poly Vinyl Co., Inc., jointly move this Court for final approval of their settlement in this matter in accordance with the Settlement Agreement & Release, ECF No. 21-1 ("Settlement Agreement"), as preliminarily approved by this Court. (ECF No. 23.)

### SETTLEMENT ADMINISTRATION RESULTS

On August 14, 2025, this Court entered an Order preliminarily approving the parties' Settlement Agreement. (*Id.*) Thereafter, on August 27, 2025, Defendant's counsel provided Plaintiff's counsel with a spreadsheet containing putative Settlement Class members' names and last known email and mailing addresses for notice administration purposes. (Declaration of James A. Walcheske in Support of Motions ("Walcheske Decl."), ¶ 41.)

On September 9, 2025, Plaintiff's counsel then mailed the Court-approved Notice to 268 putative Settlement Class members (including Plaintiff) via first-class U.S. mail. (*Id.* at ¶ 42.)

Subsequently, twenty-nine (29) Notices were returned as undeliverable. (*Id.* at ¶ 43.) Three (3) returned Notices contained forwarding information from the United States Postal Service. (*Id.*) Plaintiff's counsel further obtained alternative mailing information for 22 of the remaining 26 individuals whose Notices were returned as undeliverable utilizing their email addresses as maintained and provided by Defendant, as well as through CCAP records and skip traces. (*Id.*) Plaintiff's counsel was unable to obtain alternative mailing information for four (4) individuals. (*Id.*)

All twenty-five (25) Notices for which Plaintiff's counsel obtained alternative mailing information were promptly remailed. (*Id.*) Six (6) were returned as undeliverable a second time. (*Id.* at ¶ 44.) Thus, 259 of 268 (96.6%) putative Settlement Class members successfully received notice of the parties' Settlement Agreement and their rights thereunder. (*Id.* at ¶ 45.)

Pursuant to the parties' Settlement Agreement, putative Settlement Class members had forty-five (45) days from the date Notice was mailed or remailed to opt-into the FLSA Collective, to request exclusion from the Rule 23 Class, and/or to object to the Settlement Agreement. (*See* ECF No. 21-1, ¶ 1.19, Ex. B.) Accordingly, the vast majority of putative Settlement Class members who wished to take any of the foregoing actions had to do so on or before October 24, 2025. (Walcheske Decl., ¶ 46.)

Fifty-three (53) Settlement Class members (including Plaintiff) timely returned Consent to Join Forms, and those Forms have been filed with the Court. (*Id.* at ¶ 47; ECF Nos. 24, 24-1.) Six (6) individuals timely requested exclusion from the Rule 23 Class, and such requests have also been filed with the Court. (Walcheske Decl., ¶ 48; ECF Nos. 25, 25-1.)

Plaintiff's counsel received two (2) Consent to Join Forms after the Notice Period had closed. (Walcheske Decl., ¶ 49.) The parties conferred regarding the same and agreed to consider

them as timely for purposes of the parties' Settlement Agreement. (*Id.*) These otherwise untimely Consent to Join Forms have also been filed with the Court. (ECF Nos. 26, 26-1.)

With the exception of the foregoing two (2) forms, no other otherwise untimely Consent to Join Forms or requests for exclusion have been received. (Walcheske Decl., ¶ 50.) Further, no Settlement Class members objected (timely or untimely) to the parties' Settlement Agreement. (*Id.* at ¶ 51.)

Given the absence of any objections to the terms of the parties' Settlement Agreement, counsel for the parties submit that the terms and conditions contained therein are demonstrably fair, reasonable, and adequate.

## REMAINING PROCEDURE TO CONCLUDE THIS LITIGATION

Because no objections were filed to the parties' Settlement Agreement, the Effective Date thereof will be the tenth (10th) calendar day after the Court's entry of a Final Order dismissing this litigation with prejudice. (ECF No. 21-1, ¶ 1.8.) Within thirty (30) days of the Effective Date, Defendant will mail checks to Plaintiff's counsel payable to Plaintiff for his Court-approved Service Award, and to Plaintiff's counsel for their Court-approved attorneys' fees and costs. (*Id.* at ¶¶ 3.2(B), 3.3(B).) Within forty-five (45) days of the Effective Date, Defendant will mail Settlement Checks to all Settlement Class Members utilizing their last known mailing addresses as updated by Plaintiff's counsel during the Notice Period. (*Id.* at ¶ 2.12.)

If a Settlement Check is returned as undeliverable, Defendant and Defendant's counsel will take appropriate steps to identify and remail the Settlement Check to an alternative address, including but not limited to, one entry level skip trace. (*Id.* at ¶ 2.14.)

Settlement Class Members have sixty (60) days from the date a Settlement Check is (re)mailed to cash, deposit, or otherwise negotiate their Settlement Checks (the "Acceptance Period"). (*Id.* at ¶ 2.13.)

If a Settlement Class Member reports a lost or destroyed Settlement Check within the Acceptance Period, or otherwise requests that a Settlement Check be reissued, Defendant will issue a stop payment order on the original check, and issue a new check, which is then valid for sixty (60) days from the date of remailing. (*Id.*)

Settlement Checks that remain outstanding after the close of the Acceptance Period, as well as those payable to Settlement Class Members who could not be located despite the parties' best efforts, will expire subsequent to the Acceptance Period. (*Id.* at ¶ 2.13.) Defendant will issue a stop payment order on any and all such Settlement Checks, and such amounts shall revert to Defendant. (*Id.*)

## ARGUMENT

### I. THE PARTIES' SETTLEMENT AGREEMENT SHOULD BE APPROVED BECAUSE ITS TERMS ARE FAIR, REASONABLE, AND ADEQUATE

Pursuant to Fed. R. Civ. P. 23(e)(2), "the court may [grant final approval to a settlement agreement] only after a hearing and only on finding that it is fair, reasonable, and adequate." To that end, the Court is to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;

4

> (ii) the effectiveness of any proposed method of distributing relief to the class, including processing class-member claims;
>
> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.*

In making this determination, the court "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class. *United Founders Life Ins. Co. v. Consumers National Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted). Ultimately, resolution of class action litigation by settlement is favored. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996).

### A. Fed. R. Civ. P. 23(e)(2)(A) Is Satisfied Because Plaintiff And Class Counsel Have Adequately Represented the Class

Here, and as indicated in the parties' *Joint Motion for Preliminary Approval of Collective and Class Action Settlement*, Plaintiff does not have any antagonistic or conflicting interests with the Rule 23 Class. (*See* ECF No. 21, p. 19; *see also* Walcheske Decl., ¶ 40.) Plaintiff was allegedly injured by the same conduct as the class members and has sought and secured compensation for his own benefit and for the benefit of the absent Rule 23 Class members. (*See* Walcheske Decl., ¶ 40.)

As to Plaintiff's counsel, Walcheske & Luzi, LLC has successfully served as Class Counsel in numerous cases involving claims similar to Plaintiff's and has not engaged in any conduct in

5

this case suggesting that their representation has been anything less than adequate. Further, their efforts in administering Notice to the putative Settlement demonstrate their qualifications to handle class resolution. (*See id.* at ¶¶ 42-43, 45.)

Finally, Plaintiff's and Plaintiff's counsel's adequacy of representation is reflected by the lack of any objections to the parties' Settlement Agreement, as well as the relatively small number of requests for exclusion from the Rule 23 Class.

Thus, the record before the Court reflects that Plaintiff and Plaintiff's counsel have adequately represented the Rule 23 Class with respect to the parties' settlement.

### B. Fed. R. Civ. P. 23(e)(2)(B) Is Satisfied Because The Parties' Settlement Agreement Was Negotiated At Arm's Length

As made clear in the parties' Settlement Agreement, the Agreement resolves a *bona fide* dispute between them, with neither party conceding their respective positions despite agreeing to resolve that dispute. (*See* ECF No. 21-1, p. 1; *see also* Walcheske Decl., ¶ 35.) Specifically, the parties disagree on Plaintiff's ability to prove liability concerning nondiscretionary compensation, including but not limited to whether and which forms of additional compensation qualify as "nondiscretionary" such that they should have been included or factored-into the regular rates of Defendant's hourly employee for overtime calculation and compensation purposes, as well as whether Defendant's facially neutral rounding policy is violative of the law, particularly when it rounds both in favor of the employee and Defendant. (Walcheske Decl., ¶ 36.) Then, even if liability were proven, disputes exist regarding the extent of damages, if any, Plaintiff's ability to prove willfulness under the FLSA and WWPCL, the effect(s) of Defendant's affirmative defenses, and Plaintiff's ability to establish the amount/extent of any award of liquidated damages and/or civil penalties due, if any. (*Id.*) Such litigation involving significant questions of law and fact would require costly litigation, including substantial discovery, that reasonably would carry into

6

late 2026 or 2027. (*Id.* at ¶ 37.) Additionally, Defendant faced the risk that Plaintiff could conceivably recover all damages, costs, and attorneys' fees at the conclusion of the trial, which would be significantly more than the settlement reached and could significantly harm Defendant's financial status. (*Id.* at ¶ 36.)

Given these disputes, and the myriad of pitfalls and risks they presented for both parties, they decided to work toward a resolution, expending considerable time and effort negotiating the same, inclusive of formal mediation. Such efforts resulted in a Settlement Agreement that, while reached in compromise, was reached in good faith by the parties to resolve their disputes regarding Defendant's timekeeping and compensation policies and practices.

Thus, the record makes plain that the parties' Settlement Agreement was negotiated at arm's length and in good faith, satisfying Fed. R. Civ. P. 23(e)(2)(B).

### C. Fed. R. Civ. P. 23(e)(2)(C) Is Satisfied Because The Relief Provided To The Class Is Adequate In Light Of The Circumstances Presented

The risks presented by this litigation were extensive. Even putting aside their disputes regarding Plaintiff's underlying claims (as discussed above), the procedural hurdles in this case presented numerous instances where the scope of this litigation could be considerably altered at any time. Indeed, Plaintiff brought his claims on behalf of a putative FLSA collective and Rule 23 class. Such an endeavor involved having to move for authorization to send notice to the FLSA collective, without which Plaintiff would be the only individual with colorable claims under the FLSA and would also face an uphill battle to obtain Rule 23 certification, given that he would not have had any other opt-ins from which to obtain information supporting the same. (Walcheske Decl., ¶ 37.) Further, if Rule 23 certification was not granted, none of the members of the Rule 23 Class could have benefited from the Settlement Agreement before the Court for final approval. Rather, at best, Plaintiff could have only been successful on his individual claims, if at all. (*Id.*)

7

Weighing the parties' disagreement over Plaintiff's underlying claims and the procedural hurdles involved in this litigation against the benefits obtained for the Rule 23 Class through the parties' Settlement Agreement makes clear that the relief provided to the Rule 23 Class is more than adequate.

Plaintiff's counsel set forth in detail their extensive data analysis and calculations leading to the amounts allocated to the Rule 23 Class through the Net Fund payable to the Settlement Class in the parties' *Joint Motion for Preliminary Approval of Collective and Class Action Settlement*, (ECF No. 21, pp. 10-12). As explained therein and with respect to the amounts allocated to each Rule 23 Class member flowing from Plaintiff's rounding claim, the amounts allocated to each Rule 23 Class member were based on the damages calculated from the sample data, extrapolated across the Rule 23 Class first by location and second by their number of workweeks worked, in an effort to mimic the assumed effect of Defendant's rounding timekeeping system on their hours worked (and, monetarily, their amounts then "owed"). (*Id.* at pp. 10-11.) In this way, the allocations to each Rule 23 Class member relating to Plaintiff's rounding/timeshaving claim were designed to be representative and reflective of their assumed amounts owed (even if they were, in reality, owed less or nothing at all).

With respect to Plaintiff's nondiscretionary compensation claim, said allocations were the equivalent of the average, actual amount "owed" to each individual in the sample data, inclusive of liquidated damages. (*Id.* at p. 12.) Thus, the amounts allocated to the Rule 23 Class reflected complete success on the merits and establishing damages, including liquidated damages, with respect to nondiscretionary compensation.

Through the parties' Settlement Agreement, Rule 23 Class members are obtaining these benefits without having to file their own claims, retain their own counsel, or take any action whatsoever.

For all such reasons, the amounts recoverable by and payable to the Rule 23 Class are surely adequate, particularly in light of the risks present in this litigation and the certainty of outcome achieved without any undue delay or cost. Accordingly, Fed. R. Civ. P. 23(e)(2)(C) is satisfied.

### D. Fed. R. Civ. P. 23(e)(2)(D) Is Satisfied Because The Settlement Agreement Treats Class Members Equitably

As indicated above, the monetary value of the Settlement Fund payable to the Rule 23 Class was based on amounts Class members were reasonably calculated to be allegedly "owed" with respect to both Plaintiff's rounding/timeshaving claim and Plaintiff's nondiscretionary compensation claim. in unpaid overtime. Their individual allocations with respect to Plaintiff's rounding claim were then determined based on their location worked (given that different facilities used different timekeeping systems for different lengths of time) and the number of workweeks worked, with the assumption that the greater the number of workweek works, the greater the likelihood that they will have been adversely impacted by the operation of Defendant's timekeeping system. (*See id.* at pp. 10-11.) Thus, Rule 23 Class members were treated equitably with respect to their allocations stemming from this cause of action.

As to the portion of their allocations stemming from Plaintiff's nondiscretionary compensation claim, there was not a clear method of "cleanly" extrapolating individual's actual damages as calculated in the sample data to the Rule 23 Class on the whole, given the number of unknown variables involved (*to wit*, whether they received additional compensation, whether that additional compensation fell within what Plaintiff believed to be nondiscretionary, whether it

9

applied to any workweeks in which the individual worked overtime, such that even if the additional compensation was nondiscretionary, it should have arguably been factored into the individual's regular rate for overtime calculation and compensation purposes). (*See id.* at p. 12.) Thus, in an effort to treat all Rule 23 Class members as equitably as possible, the average amount "owed" to each individual in the sample data, inclusive of liquidated damages, was extrapolated to all putative Rule 23 Class members. (*See id.*)

For all such reasons, the Rule 23 Class members' recoveries are based on reasonable, objective criteria intentionally designed to treat them as equitably as possible. Further, and pursuant to the terms of the parties' Settlement Agreement, Class members are automatically recovering their allocated amounts without having to take any action or otherwise prejudicing them as compared against other Settlement Class Members. Thus, the Settlement Agreement satisfies Fed. R. Civ. P. 23(e)(2)(D).

## **CONCLUSION**

For all of the reasons herein, the parties respectfully request that this Court:

1. Grant final approval of the Settlement Agreement, and find that its terms are fair, reasonable, and adequate as it applies to the Settlement Class;

2. Declare the Agreement to be binding on Plaintiff, Defendant, and the Settlement Class;

3. Order that Plaintiff's released claims and the respective released claims of the FLSA Collective and Rule 23 Class are dismissed with prejudice;

4. Order that the federal claims pursuant to the FLSA of any Settlement Class member who did not timely file a Consent to Join Form with the Court are dismissed without prejudice;

5. Order that the federal claims pursuant to the FLSA and state law claims pursuant to the WWPCL of any putative Rule 23 Class member who properly and timely excluded themselves in accordance with the procedures set forth in the parties' Settlement Agreement are dismissed without prejudice;

6. Grant Plaintiff's Unopposed Motion for Approval of Service Award and approve Plaintiff's Service Award in the amount of $7,500.00;

7. Grant Plaintiff's Unopposed Motion for Approval of Attorneys' Fees and Costs and approve counsel's requested award of attorneys' fees and costs in the total amount of $77,071.67; and

8. Dismiss this matter on the merits, with prejudice, and without further costs to either party.

Dated this 26th day of November, 2025.

| | |
|---|---|
| **WALCHESKE & LUZI, LLC** | **CONWAY, OLEJNICZAK & JERRY, S.C.** |
| Counsel for Plaintiff | Counsel for Defendant |
| | |
| s/ *James A. Walcheske* | s/ *Kurt A. Goehre* |
| James A. Walcheske, State Bar No. 1065635 | Kurt A. Goehre, State Bar No. 1068003 |
| WALCHESKE & LUZI, LLC | CONWAY, OLEJNICZAK & JERRY, S.C. |
| 235 North Executive Drive, Suite 240 | 231 South Adams Street |
| Brookfield, Wisconsin 53005 | Green Bay, Wisconsin 54305 |
| Email: jwalcheske@walcheskeluzi.com | Email: kag@lcoglaw.com |
| Telephone: (262) 780-1953 | Telephone: (920) 437-0476 |