UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

RUSSELL SPETTEL,
on behalf of himself and all
others similarly situated,

      Plaintiff,                                       Case No. 23-cv-1681

    v.

POLY VINYL CO., INC.,

      Defendant.

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS**

### INTRODUCTION

This is a collective and class action brought pursuant to the Fair Labor Standards Act of 1938, as amended, ("FLSA"), 29 U.S.C. § 216(b), and Wisconsin's Wage Payment and Collection Laws, as amended, ("WWPCL"), Wis. Stat. § 109.01 et seq., Wis. Stat. § 104.01 et seq., Wis. Stat. § 103.001 et seq., Wis. Admin. Code § DWD 274.01 et seq., and Wis. Admin. Code § DWD 272.001 et seq., by Plaintiff Russell Spettel, on behalf of himself and all other similarly situated current and former hourly-paid employees of Defendant Poly Vinyl Co., Inc., for purposes of obtaining relief under the FLSA and WWPCL for unpaid regular (agreed-upon) and overtime wages. (*See, generally,* ECF No. 1, ¶¶ 88-142.)

### PLAINTIFF'S COUNSEL'S TIME AND EXPENSE LITIGATING THIS MATTER

At the outset of this matter, Plaintiff's counsel accepted representation of Plaintiff on a contingency basis, through which Plaintiff agreed to compensate Plaintiff's counsel with the

greater of forty percent (40%) of the recovery, if any, in addition to counsel's litigation-related expenses, or counsel's actual attorneys' fees and costs as recovered through a judgment or negotiated through settlement. (Declaration of James A. Walcheske in Support of Motions ("Walcheske Decl."), ¶ 10.) Counsel structures its agreements in such a manner because of the uncertain nature of wage and hour litigation with respect to scope (the uncertainty of whether Plaintiff's causes of action will extend to a collective or class and, if so, the size thereof, or alternatively, whether they will not, such that what remains are Plaintiff's individual causes of action against the defendant) and, resultingly, damages. (*Id.* at ¶ 11.) Such a structure accounts for cases where the overall recovery is and is not suitable for division as a percentage of a common fund. (*Id.*) Pursuant to its fee arrangement with Plaintiff, Plaintiff's counsel agreed to be responsible for all attorneys' fees and costs in the event of an adverse result and, to date, counsel has not received any compensation for its time spent litigating the case or reimbursement for its costs expended investigating, litigating, resolving, and administrating this matter. (*Id.* at ¶¶ 12-13.)

As of November 12, 2025, the date upon which Plaintiff's counsel filed the last consent forms considered timely by the parties, counsel expended approximately 81.7 hours litigating, resolving, and administering this matter, comprised of 71.4 hours expended by Attorneys James A. Walcheske and Scott S. Luzi, and 10.3 hours expended by their Legal Assistant conducting the administration of this matter. (*Id.* at ¶ 21.) At their usual and customary hourly rates, Attorneys Walcheske's and Luzi's hours equate to $32,380.00 (71.4 hours times $450.00 per hour), and their Legal Assistant's hours equate to $1,287.50 (10.3 hours times $125.00 per hour), for a total of $33,167.50. (*See id.* at ¶¶ 21, 24, 26-27.)

As of that same date, Plaintiff's counsel spent approximately $625.00 on litigation and administration-related expenses. (*Id.* at ¶ 31.)

2

## PLAINTIFF'S COUNSEL WORK PERFORMED

With respect to Attorney Walcheske and Luzi's work performed, such included, but is not limited to: investigating Plaintiff's potential claims and reviewing documents and information he possessed and provided to evaluate the same; drafting and filing the Complaint and corresponding filings; drafting the parties' 26(f) Report; responding to Defendant's written discovery; drafting written discovery to Defendant and reviewing and analyzing the information and documents obtained therethrough from Defendant; communicating and corresponding with Defendant's counsel; obtaining, reviewing, and analyzing sample data produced by Defendant; calculating damages and creating damages models; engaging in arm's length negotiations with Defendant's counsel; preparing for and participating in formal mediation; drafting and working with Defendant's counsel on the parties' Settlement Agreement; crafting the allocations to all putative Settlement Class members; creating the parties' Notice of Collective and Class Action Settlement; drafting and working with Defendant's counsel on all preliminary approval-relating documents; communicating with putative Settlement Class members regarding questions concerning Plaintiff's claims and the parties' Settlement Agreement; filing Consent to Join Forms; communicating internally regarding this litigation; and communicating with Plaintiff before and during the pendency of this litigation. (*Id.* at ¶ 22.) Not included in the hours summarized herein are that Plaintiff's counsel additionally devoted time to drafting and working with Defendant's counsel on the parties' final approval filings, as well as the filings in support of Plaintiff's Service Award, and the instant Motion. (*Id.* at ¶ 23.)

Counsel's Legal Assistant's time was devoted to administering notice of the parties' settlement. This included but was not limited to: formatting, mailing, and remailing Notices; emailing, researching, and conducting skip traces on individuals whose Notices were returned as

undeliverable; communicating with putative Settlement Class members; updating individuals' mailing information; and providing updates to counsel on the status of administration. (*Id.* at ¶ 25.)

Going forward, counsel will continue devoting time and attention to this matter by participating in the Fairness Hearing, communicating with Plaintiff, Defendant's counsel, and Settlement Class members, and taking any and all other actions necessary to effectuate the parties' Settlement Agreement. (*Id.* at ¶ 28.)

As a result of Plaintiff's counsel's efforts on behalf of Plaintiff and the Settlement Class, Settlement Class members are receiving amounts representative of that which they are (allegedly) owed, as explained in more detail in the parties' preliminary and final approval filings. (*See* ECF No. 21, pp. 10-12; ECF No. 27, p. 8; *see also* ECF No. 22, ¶¶ 9-17.) Further, Rule 23 Class members are receiving such benefits without having to take any action whatsoever to secure the same. (*See* ECF No. 21-1, Ex. B; *see also* ECF No. 22, ¶ 18.)

Given this, Plaintiff's counsel believes that through their efforts on this matter, they helped Plaintiff and the Settlement Class achieve an excellent result. (*See* Walcheske Decl., ¶ 34.) Further, they believe that all work performed, and all services rendered in litigating this matter through its conclusion were necessary in furtherance of such litigation and resolution. (*See id*. at ¶¶ 29, 32.)

Accordingly, and pursuant to the parties' Settlement Agreement and counsel's fee agreement with Plaintiff, Plaintiff now petitions this Court for approval of his counsel's reasonable attorneys' fees and litigation and administration-related costs of $77,071.67. Defendant stipulates that the requested award is reasonable, has agreed to pay such amount, and does not oppose Plaintiff's petition for approval of the same. (ECF No. 21-1, ¶ 3.2(A).)

# PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND COSTS ARE FAIR AND REASONABLE AND SHOULD BE APPROVED

Under the FLSA, successful plaintiffs are entitled to reimbursement for their attorneys' fees and costs. 29 U.S.C. § 216(b). Attorneys' fees and costs are also recoverable under the WWPCL. Wis. Stat. §109.03(6).

Here, Plaintiff's counsel, of its own volition, seeks approval of their attorneys' fees at a reduced rate of one-third (or 33.33%) of the Gross Settlement Amount, or $76,666.67, (*see* ECF No. 21-1, ¶ 3.2(A); *see also* Walcheske Decl., ¶ 14), in addition to their litigation-related costs, for a total of $77,071.67. (ECF No. 21-1, ¶ 3.2(A); Walcheske Decl., ¶ 14.) In accordance with their contingent fee agreement with Plaintiff, Plaintiff's counsel has not received any compensation for their attorneys' fees or reimbursement of their litigation-related costs. (Walcheske Decl., ¶ 13.)

In the Seventh Circuit, "common fund principles properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund." *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 564 (7th Cir. 1994). Indeed, "when a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund." *Id.* at 563.

A "market-based approach" is used when setting the percentage of a settlement fund to be awarded as reasonable attorneys' fees. *See, e.g., Silverman v. Motorola Sols, Inc.*, 739 F.3d 956, 957 (7th Cir. 2013) (finding that "attorneys' fees in class actions should approximate the market rate that prevails between willing buyers and willing sellers of legal services."). In applying this standard, a court is not required to "monitor how many hours the lawyers prudently devoted to the case. The client cares about the outcome alone." *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Ultimately: "When the 'prevailing' method of compensating lawyers for

'similar services' is the contingent fee, then the contingent fee is the 'market rate.'" *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986). In the Seventh Circuit, the typical contingent fee is between 33 and 40 percent. *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998).

In keeping with this approach, District Courts in the State of Wisconsin have repeatedly recognized and approved attorneys' fees in the amount of one-third (or 33.33%) of the total settlement amount as fair and reasonable in federal wage and hour litigation. (Walcheske Decl., ¶ 15 (collecting cases).)

Further, such a contingency fee is demonstrably consistent with the market rates for this geographic area. (*See id.* at ¶¶ 9, 15-16 (collecting cases and citing Declarations filed by practitioners in the State of Wisconsin confirming the market rate).) Moreover, an award of one-third (or 33.33%) of the Gross Settlement Amount recognizes the risks assumed by Plaintiff's counsel at the outset of the case, as well as the fair and reasonable result achieved on behalf of Plaintiff and the Settlement Class.

As set forth in the parties' Settlement Agreement, in addition to Plaintiff's counsel's attorneys' fees, counsel also seeks reimbursement of its reasonable litigation and administration-related expenses. (ECF No. 21-1, ¶ 3.2(A).) As of the time the parties entered-into their Settlement Agreement, that solely included Plaintiff's filing fee of $405.00. (*See id.; see also* Walcheske Decl., ¶ 31.) However, Plaintiff's counsel has incurred approximately $625.00 in litigation and administration-related costs. (Walcheske Decl., ¶ 31.)

Because the attorneys' fees and costs petitioned for were reasonably necessary to the case, are reflective of the market rate of practitioners of similar experience and of the rates approved by Wisconsin District Courts, are consistent with counsel's fee agreement with Plaintiff, and are
6

'similar services' is the contingent fee, then the contingent fee is the 'market rate.'" *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986). In the Seventh Circuit, the typical contingent fee is between 33 and 40 percent. *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998).

In keeping with this approach, District Courts in the State of Wisconsin have repeatedly recognized and approved attorneys' fees in the amount of one-third (or 33.33%) of the total settlement amount as fair and reasonable in federal wage and hour litigation. (Walcheske Decl., ¶ 15 (collecting cases).)

Further, such a contingency fee is demonstrably consistent with the market rates for this geographic area. (*See id.* at ¶¶ 9, 15-16 (collecting cases and citing Declarations filed by practitioners in the State of Wisconsin confirming the market rate).) Moreover, an award of one-third (or 33.33%) of the Gross Settlement Amount recognizes the risks assumed by Plaintiff's counsel at the outset of the case, as well as the fair and reasonable result achieved on behalf of Plaintiff and the Settlement Class.

As set forth in the parties' Settlement Agreement, in addition to Plaintiff's counsel's attorneys' fees, counsel also seeks reimbursement of its reasonable litigation and administration-related expenses. (ECF No. 21-1, ¶ 3.2(A).) As of the time the parties entered-into their Settlement Agreement, that solely included Plaintiff's filing fee of $405.00. (*See id.; see also* Walcheske Decl., ¶ 31.) However, Plaintiff's counsel has incurred approximately $625.00 in litigation and administration-related costs. (Walcheske Decl., ¶ 31.)

Because the attorneys' fees and costs petitioned for were reasonably necessary to the case, are reflective of the market rate of practitioners of similar experience and of the rates approved by Wisconsin District Courts, are consistent with counsel's fee agreement with Plaintiff, and are

stipulated to as reasonable by Defendant, Plaintiff believes that the amounts of fees and costs requested are fair and reasonable. Accordingly, this Court should approve the same.

## **CONCLUSION**

For all of the reasons stated herein, Plaintiff respectfully requests that this Court grant his Unopposed Motion for Approval of Attorneys' Fees and Costs and approve the same in the total amount of $77,071.67.

Dated this 26th day of November, 2025.

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

s/ *James A. Walcheske*
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405

WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Fax: (262) 565-6469
Email: jwalcheske@walcheskeluzi.com
Email: sluzi@walcheskeluzi.com